## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

**UNION INSURANCE COMPANY,**

       **Plaintiff,**

    **vs.**                                **No. 11-CV-351 MCA/LFG**

**BANDIDO HIDEOUT, INC. and**
**LEOPOLDO NUNEZ,**
          **Defendants.**

## MEMORANDUM OPINION AND ORDER

      **THIS MATTER** is before the Court on Plaintiff Union Insurance Company's (hereinafter "Union") *Motion for Summary Judgment*, [Doc. 20] filed November 1, 2011. Having considered the parties' submissions, the relevant law, and otherwise being fully advised in the premises, the motion is denied.

## I.      BACKGROUND AND  PROCEDURAL HISTORY

      Union issued a commercial general liability policy (the Policy) for Defendant Bandido Hideout Inc. (Bandido), a bar and nightclub located in Albuquerque, New Mexico, of which Leopoldo Nunez is the principal.  [Doc. 1 at 2; Doc. 20 at 1; Doc. 23 at 1]  The policy includes a standard "Liquor Liability" exclusion clause which provides, in pertinent part, that the Policy does not cover "'[b]odily injury' or 'property damage' for which any insured may be held liable by reason of: (1) Causing or contributing to the intoxication of any person . . . ." [Doc. 20-2 at 6] This particular provision is central to the issues here.

      <u>The Underlying Case</u>

      In March of 2010, Defendants were sued (hereinafter referred to as the "underlying suit") by Jaime and Jennifer Puentes.  [Doc. 20 at 1; Doc. 23 Ex. A]  Robert Rivera was also named a

defendant in the underlying suit; he is not a party to the present matter.  [Doc. 23 Ex. A]  The events which gave rise to the underlying suit occurred in June of 2007; the following facts are derived from the complaint filed in that action.

Mr. Puentes was a patron at Bandido on the evening of June 5, 2007.  [Doc. 1-1 at 2] Mrs. Puentes accompanied Mr. Puentes that evening.  [Id.]  Mr. Rivera was also present at Bandido.  [Id.]  Mr. Puentes knew of Mr. Rivera, but did not know him personally.  [Id.]

As the evening progressed, Mr. Rivera and several other individuals became intoxicated and "rowdy."  [Id.]  Mrs. Puentes asked Bandido staff members to cease serving alcohol to Mr. Rivera and the other intoxicated individuals, but her requests were ignored.  [Id.]

At some point, a fight occurred.  [Id.]  Mr. Puentes, Mr. Rivera, and several others were ejected from the bar through the back door.  [Id. at 2-3]  Mr. Puentes attempted to reenter, but his efforts were unsuccessful.  [Id. at 3]  Security had locked the back door precluding all who had been ejected from reentering.  [Id.]  Mr. Rivera then shot Mr. Puentes.  [Id.]

Mrs. Puentes, who was still inside the bar, heard the gun shots.  [Id.]  She exited through the front door, proceeded around the building, and discovered Mr. Puentes lying on the ground. [Id.]  The fire department eventually appeared on scene and Mr. Puentes, who was severely injured, confirmed that Mr. Rivera was the shooter.  [Id.]  Mr. Rivera was later charged with felony aggravated battery and other charges.  [Id.]  As a consequence of the shooting, Mr. Puentes suffered significant injuries and remains paralyzed.  [Id.]

The Puenteses' complaint in the underlying suit asserted six counts.  [Id. at 4-7]  Count one alleged that "as a proximate result of [Defendants] failure to comply with the applicable law and standards of care in running an alcohol-selling establishment, [the Puenteses] have suffered

and continue to suffer damages."  [Doc. 1-1 at 4] Count one alleged varying grounds of

negligence including:

> (a) Serving alcohol to [Mr.] Rivera and other patrons after . . . Defendant[s],
> through [their] employees and/or agents knew that [Mr.] Rivera and other patrons
> were extremely intoxicated;
> (b) Serving alcohol to [Mr.] Rivera and other patrons after . . . Defendant[s]
> through [their] employees and/or agents knew that [Mr.] Rivera [was] openly
> belligerent, harassing and/or threatening to attack one or more patrons at the bar;
> © Failing to provide reasonable and adequate security;
> (d) Failing to provide a safe premises;
> (e) Failing to properly train [their] employees;
> (f) Failing to hire competent employees;
> (g) Failing to provide adequate supervision of its employees;
> (h) Failing to protect or warn [the Puenteses] of a known danger;
> (I) Negligently serving alcoholic beverages; and
> (j) Violati[ng] State statutes and regulations regarding the sale of alcoholic
> beverages.

[Doc. 1-1 at 4-5]  Count two involved assault and battery allegations directed solely at Mr.

Rivera.  [Id. at 5]  Count three asserted violations of "NMSA § 41-1-1," or what the Puenteses

refer to as a "Dram Shop Action."[1]  [Id. at 5-6]  By this count, the Puenteses asserted that

Defendants sold or served alcohol to Mr. Rivera when it was reasonably apparent that he was

intoxicated, and that these actions constituted gross negligence which caused Mr. Puentes'

damages.  [Id. at 6]  Count four alleged loss of consortium as to Mrs. Puentes.  [Id.]  Count five

requested punitive damages.  [Id. at 6-7]  Count six asserted a claim of respondeat superior

relating to the employees of Defendants.  [Id. at 7]

The Present Case

---

[1] The Court observes that the Liquor Liability Act to which the Puenteses intended to refer is codified at NMSA 1978, § 41-11-1 (1986).  The Court further observes that Union also incorrectly identified NMSA 1978, § 41-4-1 (1981), the New Mexico Tort Claims Act, as the Liquor Liability Act.  [Doc. 20 at 7]

Defendants tendered the summons and complaint in the underlying suit to Union.  [Doc. 1 at 2]  The Policy provides that Union "will have the right and duty to defend [Defendants] against any 'suit' seeking . . . damages.  However, [Union] will have no duty to defend [Defendants] against any 'suit' seeking damages . . . to which this insurance does not apply."  [Doc. 20-2 at 5]  "Section I" of the Policy provides that Union "will pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies" and further provides that Union has "the right and duty to defend the insured against any 'suit' seeking those damages."  [Doc. 1-2 at 9] The liquor liability exclusion provides as follows:

> 2.  Exclusions
>     This insurance does not apply to:
>     ...
>     c.  Liquor Liability.
>         "Bodily injury" or "property damage" for which any insured may be held liable by reason of:
>         (1) Causing or contributing to the intoxication of any person;
>         (2) The furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or
>         (3) Any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages.
>         This exclusion applies only if you are in the business of manufacturing, distributing, selling, serving or furnishing alcoholic beverages.

[Doc. 20-2 at 6]

Pursuant to the Policy, Defendants demanded defense and indemnity.  [Doc. 1 at 2] Union agreed to defend Defendants subject to a reservation of rights.  [Id.]

Union sent Defendants two reservation of rights letters, the first dated May 28, 2010 and the second dated September 22, 2010.  [Doc. 1-3]  The first of these letters informed Defendants, amongst other things, that Union questioned "whether there is coverage for any of the allegations

4

made [in the underlying suit] because they all appear to arise from the sale of alcohol, which is not covered under [the] policy." [Doc. 1-3 at 1] The second letter refers to the prior letter but further adds, in pertinent part, that Union "reserves and retains its right to seek reimbursement for any defense costs, including attorneys' fees and expenses, if it later establishes that those costs were incurred in defending claims that are not covered under the [P]olicy." [Doc. 1-3 at 3]

On April 27, 2011, Union filed in the present action a "Complaint by Insurer for Declaration of Rights Under Insurance Policy." [Doc. 1] The complaint was brought under 28 U.S.C. § 2201 (2010), the Declaratory Judgment Act, and asserts jurisdiction pursuant to 28 U.S.C. § 1332 (2011).

In its complaint, Union contends that "a real and justiciable controversy exists between the parties with respect to whether [Defendants] are entitled to coverage under the Union [P]olicy, for some, any or all of the claims and damages sought in the underlying suit . . . ." [Doc. 1 at 2] Union asserts that "there is no indemnity coverage, nor does it have a duty to defend under the [P]olicy in connection with the underlying suit . . . ." [Doc. 1 at 3] Union asks that the Court enter judgment "declaring the rights and obligations of each of the parties with regard to the disputes herein," "declaring that there is no coverage under the insurance policy herein in connection with the claims against [Defendants] in the underlying suit," and "declaring that Union has no obligation to defend or indemnify [Defendants] or any other person or entity in connection with underlying suit." [Id. at 5-6]

On November 1, 2011, Union filed the motion for summary judgment presently before this Court. [Doc. 20] Therein, Union asserts that

> [t]here are no material issues of fact before this Court, and Union is entitled to summary judgment declaring that there is no coverage under the insurance policy

issued to [Defendants] by Union in the underlying suit, that Union has no obligation to defend or indemnify [Defendants] in connection with the underlying suit, for costs of suit herein . . . .

[Doc. 20 at 5]  Union also asserts that it is entitled to reimbursement "for costs and fees incurred and paid by Union on behalf of [Defendants] in the defense of underlying suit." [Id.]

In support of these claims, Union argues that the liquor liability exclusion in the Policy "applies because the underlying suit has, as its basis for recovery, allegations against [Defendants] for liability, resulting in the serious injury to [Mr.] Puentes, by reason of the causing or contributing to the intoxication of any person, specifically here [Mr.] Rivera."  [Id. at 6]

Defendants do not dispute that Defendants were "in the business of . . . selling, serving or furnishing alcoholic beverages."  [Doc. 20 at 2]  The parties also do not assert that the liquor liability exclusion is ambiguous, and for good reason.  As courts have pointed out, a liquor liability exclusion "is more or less standard language used in tavern and saloon liability policies."  *Kovesdy v. Utica Fire Ins. Co.*, 695 N.E.2d 1165, 1167 (Ohio Ct. App. 1997) (internal quotation marks and citation omitted).  "[M]any courts have found similarly worded exclusions to be unambiguous."  *Capitol Indem. Corp. v. Blazer*, 51 F.Supp.2d 1080, 1088 (D. Nev. 1999) (collecting cases).

However, while Defendants do not argue that the "dram shop action" claim in the underlying suit does not fall within the liquor liability exclusion, Defendants argue that the underlying suit asserts "several other theories of negligence . . . that have nothing to do with liquor liability."  [Doc. 23 at 6]  Defendants here claim that the underlying suit alleges that they negligently hired, trained, and supervised employees; that they negligently allowed Mr. Rivera

onto its premises despite knowing that Mr. Rivera used a prison identification card to gain entry

to Bandido and despite knowing that he has a reputation for violence; and that they negligently

ejected Mr. Puentes and "waited too long to notify the police." [Id.] According to Defendants,

"Union has a duty to defend the Defendants in the [underlying suit] until and unless every claim

other than the liquor liability claims is dismissed." [Id. at 8]

## II. DISCUSSION

### A. Summary Judgment Standards

Summary judgment under Federal Rule of Civil Procedure 56 shall be granted "if the

movant shows that there is no genuine dispute as to any material fact and the movant is entitled

to judgment as a matter of law." Fed. R. Civ. P. 56(a). When a motion for summary judgment is

made and supported as provided in this rule, the adverse party must cite "particular parts of

materials in the record, including depositions, documents, electronically stored information,

affidavits or declarations, stipulations (including those made for purposes of the motion only),

admissions, interrogatory answers, or other materials" or show "that the materials cited do not

establish the absence or presence of a genuine dispute, or that an adverse party cannot produce

admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A), (B). Judgment is

appropriate "as a matter of law" if the nonmoving party has failed to make an adequate showing

on an essential element of its case, as to which it has the burden of proof at trial. *See Celotex*

*Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Lopez v. LeMaster*, 172 F.3d 756, 759 (10th Cir.

1999).

The Court's review of Union's motion for summary judgment and Defendants' response

reveals that there are no factual disputes here. While there may be unresolved factual disputes in

the underlying suit, the issues before the Court here are purely questions of law:  whether the

allegations in the complaint in the underlying suit are all subsumed within the liquor liability

exclusion thus releasing Union from having to provide defense and indemnification and, if so,

whether Union is entitled to reimbursement for the costs it has incurred defending Defendants.

As explained below, resolution of the first issue requires the court to consider the counts asserted

in the underlying suit and the factual allegations pled in the underlying suit.  The Court need

only determine whether, as a matter of law, the liquor liability exclusion covers all of the counts.

Both parties acknowledge that resolution of the second issue, Union's entitlement to

reimbursement, is also purely a matter of law.

**B.  Issue One: Liquor Liability Exclusion**

**1.  New Mexico Law**

"In cases arising under federal diversity jurisdiction, we apply the law of the forum

state," in this case, New Mexico.  *Safeco Ins. Co. of Am. v. Hilderbrand*, 602 F.3d 1159, 1163

(10th Cir. 2010).  The Court defers to the most recent judgments of the New Mexico Supreme

Court.  *Id.*  If no controlling precedent exists, the Court attempts to predict how the New Mexico

Supreme Court would rule.  *Id.*

> When the highest court of a state whose law is being applied in a diversity case
> has not decided the issue presented, [the Court] must determine what decision the
> [state Supreme C]ourt would make if faced with the same facts and
> circumstances.  In making that determination, [the Court] may consider a number
> of authorities, including analogous decisions by the state Supreme Court, the
> decisions of the lower courts in the state, the decisions of the federal courts and of
> other state courts, and the general weight and trend of authority.

*MidAmerica Constr. Mgmt., Inc. v. MasTec N. Am., Inc.*, 436 F.3d 1257, 1262 (10th Cir. 2006)

(internal quotation marks and citation omitted).

New Mexico courts adhere to the following general principles when interpreting insurance contracts. "[I]nsurance contracts are construed by the same principles which govern the interpretation of all contracts." *Rummel v. Lexington Ins. Co.*, 1997-NMSC-041, ¶ 18, 123 N.M. 752, 945 P.2d 970 (internal quotation marks and citation omitted). "[T]he court's duty is confined to interpreting the contract that the parties made for themselves, and absent any ambiguity, the court may not alter or fabricate a new agreement for the parties." *Ponder v. State Farm Mut. Auto. Ins. Co.*, 2000-NMSC-033, ¶ 11, 129 N.M. 698, 12 P.3d 960 (internal quotation marks and citation omitted). "In construing exclusionary clauses, we must endeavor to give effect to the reasonable expectations of the insured." *Knowles v. United Servs. Auto. Ass'n,* 113 N.M. 703, 707, 832 P.2d 394, 398 (1992).

Rather than filing a motion within the underlying case pending in state court, Union has filed this collateral action for declaratory judgment. New Mexico law is well settled that the determination of the duty to defend should generally be made in the primary action. *Lopez v. NM Pub. Sch. Ins. Auth.*, 117 N.M. 207, 210, 870 P.2d 745, 748 (1994). In New Mexico, a court considering a collateral action will hold that the insurer has a duty to defend unless the insurer shows as a matter of law that all claims arise from the injury excluded by the insurance policy. *Id.* at 210-11, 870 P.2d at 748-49 (citing *Foundation Reserve Ins. Co v. Mullenix*, 97 N.M. 618, 619-20, 642 P.2d 604, 605-06 (1982) and stating that where "the complaint tended to show an occurrence within the coverage of the policy, . . . the insurance company had a duty to defend *until* it could be determined *in the primary action* whether the exclusionary provision in the policy applied. Thus, . . . only if this Court can say that *all* claims arose out of the molestation as a matter of law would we not remand the question to the trial court in the primary lawsuit."

(emphasis in original) (internal quotation marks and citation omitted)).  An insurer cannot bring a collateral action to "establish actual facts either contrary to or not alleged in the complaint, thereby relieving [the insurer] from a duty either to defend or to pay under the terms of the policy as a matter of law." *Mullenix*, 97 N.M. at 620, 642 P.2d at 606.[2]  Instead, the Court will only consider the complaint and whether "the alleged facts tend to show an occurrence within the coverage," even if "the complaint fails to state facts with sufficient clarity so that it may be determined from its face whether or not the action is within the coverage of the policy." *Id.* at 619-20, 642 P.2d at 605-06 (internal quotation marks omitted) (quoting *Am. Emp'rs' Ins. Co. v. Cont'l Cas. Co.,* 85 N.M. 346, 348, 512 P.2d 674, 676 (1973)).  Thus, if the language of the complaint is ambiguous but "tends to show an occurrence within the coverage of the policy," summary judgment on a collateral complaint for declaratory action will be denied. *Mullenix,* 97 N.M. at 620, 642 P.2d at 606 ("[T]he complaint filed in this case alleges facts within the coverage of the policy, and it is the duty of the insurer to undertake the defense even though its own investigation has revealed that the claim sued upon is not in fact covered."); *see also Lopez*, 117 N.M.  at 210-11, 870 P.2d at 748-49 ("Although it appears to this Court from the factual allegations supporting the causes of action that these claims most likely arose from the molestation and alleged failure of the School District to respond to or prevent those acts, we bear in mind the principle from *Mullinex* that the factual determination is not for this Court but for the

---

[2] Unpleaded but known facts may trigger the duty to defend. *Am. Gen. Fire and Cas. Co. v. Progressive Cas. Co.*, 110 N.M. 741, 744, 799 P.2d 1113, 1116 (1990) ("The duty of an insurer to defend arises from the allegations on the face of the complaint or from the known but unpleaded factual basis of the claim that brings it arguably within the scope of coverage.") However, unpleaded but known facts do not allow an insurance company to escape its duty to defend. *Mullenix*, 97 N.M. at 620, 642 P.2d at 606.

Court in the primary action. . . . Until the Insurance Authority proved to the satisfaction of the

federal trial court that all claims arose from the molestation, however, it was under a duty to

defend because the general policy offers coverage for personal injury claims."); *Bernalillo Cnty.*

*Deputy Sheriff's Ass'n v. Cnty. of Bernalillo*, 114 N.M. 695, 697, 845 P.2d 789, 791 (1992) ("If

the allegations of the complaint clearly fall outside the provisions of the policy, neither defense

nor indemnity is required.").

        Here, the parties dispute whether the causes of action alleged in the complaint are all

solely tied to the alleged fact that Defendants caused or contributed to Mr. Rivera's intoxication

and violated state liquor control laws.  Defendants ask this Court to follow the reasoning applied

in a case in which the court determined that the complaint as pleaded potentially fell within the

coverage and not within the liquor liability exclusion, and thus Defendants argue that the counts

must be considered in the abstract in determining whether the insurer has the duty to defend.

*Penn-Am. Ins. Co. v. Peccadillos, Inc.*, 27 A.3d 259, 265 (Pa. Super. Ct. 2011).   However,

Union points us to factually similar cases wherein the courts determined that there was no duty

to defend, even though the counts in the abstract may have fallen within coverage, because the

facts alleged in the complaint fell within the policy's liquor liability exclusion. *See, e.g., Colony*

*Insurance Co. v. Events Plus, Inc.*, 585 F.Supp.2d 1148, 1155-56 (D.Ariz. 2008).  Both parties

agree that New Mexico does not specifically address this question, and the Court has not found

any express answer in New Mexico case law through its own research.  This Court, therefore,

must predict which analysis the New Mexico Supreme Court would apply.

        In determining whether an exclusionary clause in an insurance policy applies, New

Mexico courts apply the standards described below.  "The parties to an insurance contract may

validly agree to extend or limit insurance liability risks.  Thus, exclusions in insurance policy coverage provisions that are clear and unambiguous and that do not conflict with public policy expressed by statute will be enforced."  *N.M. Physicians Mut. Liab. Co. v. LaMure*, 116 N.M. 92, 95, 860 P.2d 734, 737 (1993) (internal quotation marks omitted); *see also United Nuclear Corp. v. Allstate Ins. Co.*, 2012-NMSC-032, ¶ 18, ___ N.M. ___, ___ P.3d ___ ("An exclusion does not conflict with an insurance policy's insuring agreement simply because it affords less or different coverage as compared with what the policy would provide without the exclusion; that is the very purpose of an exclusion, to restrict the scope of the policy beyond what would otherwise be covered.").  Nonetheless, "[g]rants of coverage should be construed broadly while exclusions are interpreted narrowly."  *United Nuclear Corp.*, 2012-NMSC-032, ¶ 15 (internal quotation marks and citation omitted).  It is the obligation of the insurer to draft an exclusion that clearly and unambiguously excludes coverage.  *See, Knowles*, 113 N.M. at 705, 832 P.2d at 396.

　　"In an action to determine a duty to defend, the insurance company has the burden of showing that there is no duty to defend, as by showing that a claim falls within a provision that limits or excludes coverage."  46 C.J.S. Ins. § 1628 (2012) (internal footnotes and citations omitted); *see also Lopez*, 117 N.M. at 211, 870 P.2d at 749 (affirming "the trial court's grant of summary judgment because the Insurance Authority did not meet its burden of proving as a matter of law that all claims arose out of an excluded act, and the Insurance Authority had a duty to defend until it met that burden.").   "In determining the applicability of [an] exclusion, [the] focus must be on the origin of the damages, not the legal theory asserted for recovery."  *Id.*, at 209, 870 P.2d at 747 (internal quotation marks, citation and emphasis omitted).

　　In *Lopez*, the parents and next-friends of a student filed the underlying law suit against

the school district, a principal and a special education teacher.  *Id.* at 208, 870 P.2d at 746.  The

underlying complaint alleged that the teacher had molested the student, and sued "for numerous

torts directly arising from the molestation," as well as against the district for "negligence in the

hiring, retaining, and supervising of [the teacher], for failure to ensure [the student's] safety and

liberty, . . . for failure to provide an education for [the student], an individual with disabilities,

. . . [and, among other things] numerous constitutional rights violations and race discrimination."

*Id.*  The School District brought a declaratory judgment action against the insurer declaring the

insurer was obligated to defend, and the trial court granted the School District's motion for

summary judgment.  *Id.*  The Supreme Court upheld the trial court's determination because it

could "not say as a matter of law that all of the personal injury claims in the federal lawsuit arose

from an act of sexual molestation that was excluded from coverage."  *Id.*  The Court held that the

insurer did not have the duty to defend some of the actions, specifically an allegation of

negligence in hiring all teachers, because the claim did not allege specific damage to the student;

rather, it was clear from the complaint that "the damages from negligence in hiring [the teacher]

arise from the uninsured risk of sexual misconduct, and thus there is no duty to defend a claim

for negligence in hiring."  *Id.* at 210, 870 P.2d at 748.  However, from the complaint it was

unclear whether some of the other allegations were tied to the sexual molestation, including,

among others, allegations that "the Board . . . failed to provide evenhanded treatment and

reasonable accommodations to [the student]," and that the student's "status as an Hispanic

person contributed to the failure."  *Id.*  The Court thus stated:  "Based on the general allegations,

it is possible that the [parents and next-friends] may have intended to prove that the School

District failed to enforce the IEP or discriminated against them in some manner unrelated to [the

student's] molestation." *Id.* at 211, 870 P.2d at 749.  Thus, even though the court stated that it appeared "from the factual allegations supporting the causes of action that these claims most likely arose from the molestation," it was not for this Court "but for the court in the primary action" to make the factual determinations, and therefore the Court could not determine as a matter of law that the exclusionary clause applied to all of the claims in the complaint.  *Id.* at 210-11, 870 P.2d at 748-49.  Accordingly, even though the court held "that the policy coverage . . . specifically excludes coverage arising from sexual misconduct," the Court affirmed "the trial court's grant of summary judgment because the [insurer] did not meet its burden of proving as a matter of law that all claims arose out of an excluded act, and the [insurer] had a duty to defend until it met that burden."  *Id.* at 211, 870 P.2d at 749.

Other New Mexico collateral declaratory judgment cases have held that the insurer failed to establish that coverage did not exist and thus the insurer had the duty to defend.  For example, in *Mullenix*, the underlying complaint was ambiguous and did not allege whether or not the damaged tractor-trailer rig was being towed at the time of the property damage.  *Mullenix*, 97 N.M. at 619-20, 642 P.2d at 605-06.  If the rig was being towed, an exclusion to the policy applied.  *Id.* at 619, 642 P.2d at 605.  The insurer filed an action for declaratory judgement alleging the damage occurred while the tractor-trailer rig was being towed.  *Id.*  However, the Court upheld the trial court's denial of declaratory relief because the determination of the facts should occur in the underlying action.  *Id.* at 620, 642 P.2d at 606.  The Court further stated that "[u]nder notice pleading, the evidence in a case may establish liability or coverage different from that alleged in the pleadings or otherwise anticipated by the parties."  *Id.  See also Servants of the Paraclete, Inc. v. Great Am. Ins. Co.*, 857 F. Supp. 822, 832-34, (D.N.M. 1994) (relying on

*Mullinex* in determining that one insurer had breached its duty to defend where there were

questions of law for the court to decide on the issue the duty to defend, even though the Court

ultimately determined that the duty to indemnify did not exist).

However, in another case involving a declaratory judgment action brought by an insurer

for a declaration of no duty to defend or indemnify, the New Mexico Supreme Court affirmed

the determination of the district court that there was no duty to indemnify or defend. *LaMure*,

116 N.M. at 93-94, 860 P.2d at 735-36 (noting that the insurer financed the defense under a

reservation of rights until the district court in the declaratory judgment action determined that it

had no obligation to do so, and that a confidential stipulated judgment was entered while the

appeal was pending). The underlying complaint in *LaMure* alleged medical malpractice by a

doctor for sexually molesting a minor. *Id.* at 94, 860 P.2d at 736. The initial sexual contact

occurred "under the pretense of treating [the minor] for the infected thumb," but the sexual

contact continued for another eighteen months not "under the guise of medical treatment." *Id.*

The facts alleged in the complaint only alleged liability based on the acts of sexual abuse which

had supported separate criminal convictions for criminal sexual contact of a minor and criminal

sexual penetration. *Id.* The policy covered bodily injury for malpractice "resulting from

rendering or failing to render . . . professional services by the insured," but excluded "liability of

the insured arising out of the performance of a criminal act." *Id.* (internal quotation marks

omitted). The Court favorably cited cases from other jurisdictions defining "professional

services" as an act or service which "exacts the use or application of special learning or

attainments of some kind," and "involving specialized knowledge, labor, or skill, and the labor

or skill involved is predominantly mental or intellectual." *Id.* at 96, 860 P.2d at 738. The Court

concluded that "[w]hen LaMure stopped examining [the minor's] thumb and began sexually assaulting him, LaMure's rendering of professional services ended," and thus held that the insurer did not have the duty to defend in the underlying action. *Id.* at 97, 860 P.2d at 739.  The New Mexico Supreme Court has determined that no duty to defend existed in at least one other case as well. *Bernalillo Cnty. Deputy Sheriffs Ass'n*, 114 N.M. at 698, 845 P.2d at 792 (holding no coverage or duty to defend under an errors and omissions policy which did not cover breach of contract claims or intentional acts where the complaint alleged willful violations of law and breach of contract claims).

It is within the context of this New Mexico precedent that this Court turns to the analysis of the Policy and underlying complaint in this case.

## 2.  Interpreting the Liquor Liability Exclusion

At dispute here is the applicability of the liquor liability exclusion.  As described above, Union argues that the liquor liability exclusion applies because "the underlying suit has, as its basis for recovery, allegations against [Defendants] for liability, resulting in the serious injury to [Mr.] Puentes, by reason of the causing or contributing to the intoxication of any person, specifically here [Mr.] Rivera."  [Doc. 20 at 6]  Accordingly, Union contends that "[a]ll claims for personal injury by [Mr.] Puentes [in the underlying suit] . . . are not covered and Union is entitled to summary judgment as a matter of law, and [requests an] order declaring that it has no duty to defend nor indemnify [Defendants] in the underlying suit."  [Doc. 20 at 7]  Defendants counter that the underlying suit involves "several theories of negligence that have nothing to do with the service of liquor" and that Union has a duty to defend until all non-liquor liability claims are dismissed.  [Doc. 23 at 8] Union refers us to the majority rule:

16

> most other courts have made the distinction between (a) allegations arising
> directly out of or dependent upon the sale of alcohol, the service of alcoholic
> beverages, or the causing of a person's intoxication, and (b) allegations based in
> more general theories of negligence which could arise in contexts completely
> unrelated to alcohol.

*Colony Ins. Co.*, 585 F.Supp.2d at 1152; *see also Capitol Indem. Corp.*, 51 F.Supp.2d at 1088

(collecting cases). The former category of allegations would be subsumed within the scope of

the liquor liability exclusion whereas the latter would not. *See Colony Ins. Co.*, 585 F.Supp.2d at

1152, 1154. Courts have clarified the mechanisms for differentiating between these two types of

allegations. "[T]he vast majority of cases . . . have held that, where other negligence claims are

so *inextricably intertwined* with the negligent provision of alcohol, coverage of those claims is

precluded under a liquor liability exclusion." *Colony Ins. Co.*, 585 F.Supp.2d at 1154 (emphasis

added) (collecting cases). The critical factor, at least one court has held, is "the nexus between

the allegations and the consumption of alcohol." *Capitol Indem. Corp.*, 51 F.Supp.2d at 1089.

Other courts have described the inquiry as involving an examination into the "efficient and

predominating cause" of the underlying allegations. *Property-Owners Ins. Co. v. Ted's Tavern,

Inc.*, 853 N.E.2d 973, 981-82 (Ind. Ct. App. 2006).

Defendants ask us to adopt the reasoning in *Peccadillos, Inc.*, 27 A.3d 259, and conclude

that at least some of the negligence claims have nothing to do with liquor liability. [Doc. 23 at

6-7] In *Peccadillos*, two patrons of Peccadillos, a bar, were over-served, became rowdy, and

were ejected. *Id.* at 262. After being removed from the bar, the patrons drove and caused a fatal

accident. *Id.* at 262-63. Peccadillos was sued by the estate of the deceased victims of the

accident and others on the theory that it had been negligent "by ejecting [the patron who drove]

from the premises after the physical altercation rather than by taking him in charge or

17

summoning the police when . . . Peccadillos knew or should have known that [the driver] would

attempt to operate a motor vehicle in his unsafe, extremely intoxicated condition." *Id.* at 263.

Peccadillos sought defense and indemnification from Penn-America, its insurer. *Id.* at

263. The insurer sought a declaratory judgment that it was not required to provide defense and

indemnification because the liquor liability exclusion in the liability policy it issued

Peccadillos—that exclusion being identical to the one in the present matter—excluded coverage.

*Id.* at 263, 267. The insurer argued that:

> the accident was caused or contributed to by Peccadillo's continued service of
> alcohol to the visibly intoxicated [patrons], and then ejecting [them], knowing
> [they] would operate a motor vehicle. Accordingly[,] ... [p]laintiffs['] injuries
> were at the very least 'contributed to' by the service of alcohol.... Because the
> injuries were contributed to by the intoxication of [the patrons], such injuries are
> excluded from coverage by the [l]iquor [l]iability [e]xclusion which precluded
> coverage for injuries for which the insured may be held liable by reason of
> '[c]ausing or contributing to the intoxication of any person.'

*Id.* at 266.

The Superior Court of Pennsylvania rejected this contention, holding that the plaintiffs

complaint in the underlying lawsuit:

> is not based on whether Peccadillos caused or contributed to [the patron's]
> intoxication. Instead, it premises liability on Peccadillos' ejection from its
> premises of two sorely intoxicated patrons, whose brawling in the bar had
> revealed their lack of impulse control, and whose inability to control a deathly
> instrumentality like an automobile was readily apparent. . . . These allegations
> neither assert nor rely on Peccadillos' violation of the Liquor Code or any statute,
> nor do they arise directly from Peccadillos' provision of liquor or contribution to
> the men's intoxicated condition. . . . Indeed, the plaintiffs could aver the same
> facts even had the two men merely entered Peccadillos' drunk and engaged in the
> conduct that prompted their ejection, regardless of whether Peccadillos' provision
> of alcohol had actually contributed to the men's intoxication or prompted their
> behavior. Instead, Plaintiffs' averments suggest a set of duties germane to
> Peccadillos' obligation to control the conduct of third persons.

*Id.* at 268.

This Court is persuaded that New Mexico courts would embrace the majority's test in light of the fact that, in New Mexico, courts examine the origin of the damages, or the facts giving rise to the action, to decide the applicability of an exclusionary clause. *Lopez*, 117 N.M. at 209, 870 P.2d at 747. New Mexico courts would look to the nexus between the consumption of alcohol and the allegations and would inquire whether the allegations are inextricably intertwined with the negligent provision of alcohol to determine if the liquor liability exclusion applies and precludes coverage.

The Court further concludes that New Mexico would not follow the analysis in *Peccadillos*. Though the *Peccadillos* Court concluded that the underlying complaint brought claims based on duties separate from the duty to not serve alcohol to bar patrons to the point of intoxication, the facts alleged in that case made it clear that, without the bar's actions of serving to the point of intoxication, there would not have been a fatal vehicle accident. *Peccadillos,* 27 A.3d at 262. The negligence allegations against Peccadillos directly arose from Peccadillos causing or contributing to the patrons' intoxication. The court in *Peccadillos* did not rely on these allegations, however, and stated "[i]t is not the actual details of the injury, but the nature of the claim which determines whether the insurer is required to defend." *Id.* at 265. New Mexico has expressly rejected such reasoning, instead concluding that the applicability of an exclusionary clause is determined by focusing on the "origin of the damages," or the facts giving rise to the action, "not the legal theory asserted for recovery." *Lopez*, 117 N.M. at 209, 870 P.2d at 747.

Applying this analysis to the case at hand, this Court first notes that several of the allegations in the underlying suit are expressly based on Defendants contributing to the

19

intoxication of Mr. Rivera and others.  This includes several of the allegations in count one, the

negligence count, including that Defendants: (1)(a) served alcohol to Mr. Rivera and other

patrons despite knowing that they were intoxicated; (1)(b) served alcohol to Mr. Rivera and

other patrons despite knowing that Mr. Rivera was openly belligerent and threatening to attack

one or more patrons; and (1)(I) served alcohol negligently.  Similarly, Count three, the "[d]ram

[s]hop [a]ction," asserts that Defendants served alcohol to Mr. Rivera when it was apparent that

he was intoxicated and that Defendants were grossly negligent in doing so.  The liquor liability

exclusion expressly and unambiguously provides that the Policy does not apply to allegations

that Defendants caused or contributed to the intoxication of any person.  Defendants do not argue

otherwise.  As such, the Court concludes that Union has no duty to defend or indemnify

Defendants as to these claims.

Whether the exclusion applies to the remaining negligence claims brought in Count One

of the underlying suit is the heart of the present dispute.  The remaining negligence claims

include that Defendants failed to: (1)© provide reasonable and adequate security; (1)(d) provide

a safe premises; (1)(e) provide training for its employees; (1)(f) hire competent employees;

(1)(g) provide adequate supervision of its employees; and (1)(h) protect or warn the Puenteses of

a known danger.[3]  Defendants contend that these claims "have nothing to do with liquor

liability."

_____

[3] Defendants also contend that the underlying suit alleges that Defendants negligently
allowed Mr. Rivera onto its premises despite knowing that Mr. Rivera used a prison
identification card to gain entry to Bandido and despite knowing that he has a reputation for
violence and that Defendants negligently ejected Mr. Puentes and "waited too long to notify the
police."  [Doc. 23 at 6]  Yet, these claims do not appear in the complaint, and thus this Court will
not consider these statements in deciding the issue of the duty to defend.

Where a complaint is ambiguous and it is not clear whether the basis of liability falls within coverage or outside of coverage, the court will not declare that there is no duty to defend. *Lopez*, 117 N.M. at 210-11, 870 P.2d at 748-49.  It seems most likely that at trial, the Puenteses will rely on Defendants causing or contributing to the intoxication of Mr. Rivera in establishing each cause of action.  It further seems most likely that at trial the allegations that Defendants failed to provide proper security and a safe premises will be inextricably intertwined with the alleged negligence based on Defendant causing or contributing to the intoxication of Mr. Rivera and/or serving Mr. Rivera in violation of state liquor law.  However, it is also possible, whether or not likely, that, on the one hand, the Puenteses will fail to establish that Defendants caused or contributed to the intoxication of Mr. Rivera, and, on the other hand, failed to provide adequate security and a safe premises or warn of a danger, specifically the allegedly violent, gun-wielding Mr. Rivera.  It is also possible that a jury could determine that separate from and in addition to Defendants' causing or contributing to the intoxication of Mr. Rivera, Defendants failed to provide adequate security and a safe premises from potentially violent persons in its parking lot. The allegations of failing to provide a safe premises, adequate security or failing to properly train its employees (which may include the security staff), failing to hire competent employees (which may include the security staff) are "based in more general theories of negligence which could arise in contexts completely unrelated to alcohol." *Colony Ins. Co.*, 585 F.Supp.2d at 1152.  For example, several premises may attract potentially violent individuals, from gas stations to superstores, or schools to courts, none of which may serve alcohol and cause or contribute to the intoxication of individuals, yet may allegedly fail to meet a duty of ordinary care in providing security to its patrons.  As the complaint is vaguely pleaded and does not tie each allegedly

negligent action to the an action falling clearly within the liquor liability exclusion, this Court cannot say that, as a matter of law, all of the allegations of negligence "aris[e] directly out of or [are] dependent upon . . . the causing of [Mr. Rivera's] intoxication." *Id.*

Thus, this case is indistinguishable from *Lopez*, where, though the Court believed that all of the allegations were most likely related to the injury excluded from coverage, it was possible that the underlying plaintiffs intended to prove some of the causes of action based on facts independent of the excluded injury. *Lopez*, 117 N.M. at 210-11, 870 P.2d at 748-49. Under New Mexico law, including *Lopez* and *Mullenix*, this Court as the collateral court must deny the request for declaratory relief, as only the primary Court is in the position to evaluate the facts once they are developed in the underlying action. *Id.*; *Mullenix*, 97 N.M. at 620, 642 P.2d at 606. "The insurer must . . . fulfill its promise to defend even though the complaint fails to state facts with sufficient clarity so that it may be determined from its face whether or not the action is within the coverage of the policy, provided the alleged facts tend to show an occurrence within the coverage." *Mullenix*, 97 N.M. at 619-20, 642 P.2d at 605-06 (internal quotation marks and citations omitted). Until Union proves to the satisfaction of the trial court below that all claims arose from facts falling within the liquor liability exclusion, it is under a duty to defend because the Policy expressly provides for the defense of bodily injury claims. *See Lopez*, 117 N.M. at 211, 870 P.2d at 749. Union's motion for summary judgment as to the duty to defend is denied.

## C. Issue Two: Reimbursement

Union next contends that if no duty to defend exists, it is entitled to reimbursement of the costs of defense incurred in defending the underlying suit. [Doc. 20 at 10] However, because this Court has determined that it cannot grant summary judgment in favor of Union on the issue

of the duty to defend, this Court need not reach the issue of reimbursement.

**IT IS THEREFORE HEREBY ORDERED THAT** Union is not entitled to summary

judgment on either the issue of coverage or reimbursement and the motion is **denied.**

**SO ORDERED this 28th day of September, 2012.**


M. CHRISTINA ARMIJO
UNITED STATES DISTRICT JUDGE